UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-81568-CIV-MARRA

L. LOUIS MRACHEK and
MRACHEK, FITZGERALD, ROSE
KONOPKA, THOMAS & WEISS, P.A.,

Appellant,

vs.

GARY P. ELIOPOULOS,

Appellee.

_____/

## OPINION AND ORDER

This cause is before the Court on the appeal by Appellants L. Louis Mrachek and

Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A. ("Appellants") of the bankruptcy

court's July 27, 2015 order awarding sanctions against PAH Co., L. Louis Mrachek and the Law

Firm of Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A. and the November 2, 2015

order determining the amount of a sanctions award against PAH Co., L. Louis Mrachek and the

Law Firm of Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A., and directing

payment. The Court has carefully considered the briefs of the parties, the entire record on appeal,

and is otherwise fully advised in the premises.

I. Background

The facts, based upon Appellants and Appellee's statement of facts in their appellate

briefs and the appellate record, are as follows:

PAH Co. ("PAH") and Appellee, Gary P. Eliopoulos ("Eliopoulos"), a debtor in

bankruptcy, have been involved in years of litigation in both state court and bankruptcy court.

As part of that litigation, PAH filed an adversary proceeding challenging Eliopoulos' discharge in bankruptcy, which was tried before bankruptcy Judge Erik P. Kimball. In the midst of that trial, Eliopoulos hired new lawyers, Shraiberg, Landau & Ferrara ("SFL"), a firm that employs a number of former law clerks to bankruptcy judges.  The principal of PAH, Peter Halmos ("Halmos"), perceived that, upon the appearance of new counsel, Judge Kimball turned against PAH.  Halmos decided to retain new counsel who also had attorneys who were formerly law clerks to bankruptcy judges.  Halmos contacted Eric Pendergraft ("Pendergraft"), a former law clerk of Judge Kimball, who was then employed by Burr & Forman in Fort Lauderdale.

Mr. Halmos sent Pendergraft the following email on March 16, 2014, which states, in relevant part:

> My name is Peter Halmos. One of my corporate affiliates is PAH Corp., of which I am sole shareholder.  PAH is the sole creditor in a (fraudulent) bankruptcy proceeding before Judge Kimball in West Palm Beach. Gary Eliopoulos, an architect in Del Rey [sic] Beach, has filed the bankruptcy petition.  The matter is in mid-trial, continuing Monday. Something truly alarming happened during the proceedings this past Friday as to which you may be uniquely positioned to assist.  If you have no conflict and could talk with me Monday (hopefully in the morning) I would greatly appreciate.

Pendergraft believed he could not represent PAH for two reasons. First, Judge Kimball has a rule that his former law clerks cannot appear in front of him on any matter for one year after they leave their clerkships.  Second Pendergraft was a law clerk for Judge Kimball while the case the case was pending before the judge.

After receiving the email, Pendergraft forwarded the email to a partner at Burr & Forman stating, "I handled parts of the case while I was working for the judge, so I don't think I can help this guy."  Nonetheless, Pendergraft telephoned Halmos that day. Phone records show one phone

call for two minutes and another one for 19 minutes.

On May 12, 2014, SFL extended an employment offer to Pendergraft which he accepted. Pendergraft began working at SFL on June 16, 2014. He did not work on Eliopoulos' file while at SFL.  Prior to being hired, Pendergraft informed SFL during his interview process about the conversation with Halmos.

On July 31, 2014, PAH's attorney, Jesse Stellato, contacted SFL regarding SFL's employment of Pendergraft.  On August 4, 2014, SFL gave PAH and Halmos notice of Pendergraft's employment.  On September 3, 2014, PAH filed a motion to disqualify SFL.  At an October 3, 2014 hearing, Judge Kimball explained that in order for him to resolve the motion, Halmos would need to reveal the substance of his conversation with Pendergraft, and he encouraged the parties to reach an agreement regarding the necessary disclosure.  Judge Kimball stated that he could protect the information from outsiders by closing the courtroom and sealing the records.

On October 6, 2014, with no agreement in place, Halmos testified at his deposition that he waived any claim of privilege as to his communications with Pendergraft.  As to the conversation with Pendergraft, Halmos testified that, at the very beginning of their conversation, he asked Pendergraft if he had any conflict and whether their conversation was subject to privilege and confidentiality.  He further testified that Pendergraft reassured him that it was. Halmos told Pendergraft that he felt he was disadvantaged by the fact that his opponent had attorneys who were former law clerks to bankruptcy judges, and he was calling Pendergraft because he was a former law clerk to a bankruptcy judge.   Halmos testified that Pendergraft told him that, while was working for Judge Kimball, there was a lot of discussion about this case.

3

Halmos stated that Pendergraft then asked him if there were settlement discussions and they discussed what Halmos was looking for.  Finally, they discussed strategy for the case and section 523 of the bankruptcy code.

Pendergraft testified in his deposition that he could not remember: (1) if he and Halmos discussed settlement or strategy; (2) if they discussed any confidential information that could have been used to Halmos' disadvantage or (3) whether there was a discussion of the bankruptcy code.  Pendergraft does remember telling Halmos that he had a conflict and could not represent him.

On October 8, 2014, Judge Kimball decided to transfer the motion to disqualify to Bankruptcy Judge John Olson, to avoid any appearance of partiality.  The next day, Stellato filed an emergency motion to withdraw as counsel for PAH, to which PAH objected.  Judge Kimball granted the motion to withdraw.

L. Louis Mrachek ("Mrachek") entered his appearance on behalf of PAH on October 23, 2014.  On December 18, 2014, Judge Olson held a hearing on the motion to disqualify, where he heard from various witnesses including Pendergraft and Halmos.

At the end of the hearing, Judge Olson denied the motion to disqualify and stated the following:

> I'm satisfied here that Mr. Pendergraft's motives were entirely pure when he picked up the phone and -- first responded by e-mail, and then had a conversation . . .
>
> I have to put this in context. This was the very first contact in Mr. Pendergraft's professional life, with a possible source of business. Given that he was doing what I gather was document review in a large firm, it may actually have been his first client contact in his professional life.
>
> Mr. Pendergraft has, accordingly, learned early on in his career that client contact, while

highly desired by associates, is not necessarily a desirable thing in the life of a lawyer.

He knew from the very start of the conversation with Mr. Halmos that he could not take the case for the two obvious reasons that were -- have been discussed, but he was, quit [sic] plausibly, and his motivation in making the call, I'm satisfied, was that he hoped for future, or other work, and a genuine desire to assist someone who reached out to him in finding a lawyer who could help him.

. . .

I find that Mr. Pendergraft's recollection of the telephone conversation, that is the crucial element in this case, is entirely plausible.

Mr. Halmos' recollection of that conversation, by contrast, is entirely implausible. It is absolutely implausible and incredible to me that Mr. Pendergraft said at the beginning of that conversation that he had no conflict and could take the work.

. . .

The confidential information that was purportedly passed was all information of a sort that was public at the time that the conversation had, with a singular exception of Mr. Halmos' belief, an irrational belief at best that he could, or his company could recover more in the bankruptcy proceeding of Mr. Eliopoulos than the amount of his proof of claim.

. . .

The information is now, of course, entirely  public as a result of PAH, Co.'s determination that it would proceed with this exercise, which I could fairly characterize as a fool's errand.

We are now in the position of Mr. Halmos trying to preserve and protect as confidential information which he's done everything in his power to make public, despite having the opportunity not to do so, and to do so under provisions of Judge Kimball's order of October 3rd.

Every lawyer who could possibly handle this case knows every bit of this information, and a great deal more about it is a result of this hearing, and as a result of the decision to make it public, that was made by Mr. Halmos.

Now, it appears it may well be that this motion to disqualify was filed in all good faith, and I do not question Mr. Stellato's good faith in bringing it.  I think in retrospect he may conclude that it was something he would not do again.

. . .

It looks to me like this was a deliberate attempt, though, or might have been to disrupt and dis-rail the bankruptcy proceeding. That question is not really before me today. What is before me is the motion to disqualify, which is denied.

(Dec. 18, 2014 Tr.  217-22.)

Prior to the hearing on the motion to disqualify, Eliopoulos had filed two sanctions motions relating to the motion to disqualify.  The first was a motion for sanctions against PAH and his counsel pursuant to 28 U.S.C. § 1927, 11 U.S.C. § 105 and the inherent power of the court.  The second was his motion for sanctions against PAH and PAH's counsel pursuant to Bankruptcy Rule 9011.  In both motions, Eliopoulos requested that sanctions be entered against PAH, Stellato, David A. Carter, P.A. (with whom Stellato was affiliated for some period of time), Jesse Stellato, P.A. and "any subsequent attorney who appears for PAH and advocates the positions set forth in the Motion to Disqualify."  On February 26, 2015, Judge Olson held a non-evidentiary hearing on both motions.

On July 27, 2015, Judge Olson entered an order awarding sanctions against PAH and Mrachek under Rule 9011, but he did not award sanctions against David A. Carter, P.A., Jesse Stellato or Jesse Stallato, P.A.  The order concluded that the deposition transcript of Halmos showed Halmos waived any privilege with respect to the communications with Pendergraft and that no confidential information was conveyed during the telephone call between Halmos and Pendergraft.  The order also stated that, after PAH's deposition was taken, Carter and Stellato withdrew from representing PAH, which meant that these attorneys "had obviously determined that Halmos' version of events as set forth in the Motion to Disqualify was poppycock and that the factual assertions in the Motion to Disqualify were insupportable."  (July 27, 2015 Order at 2-3.)  In imposing sanctions on PAH, the order stated that it was "perfectly clear" from the

6

deposition transcript that the motion to disqualify was "without factual foundation" and that Halmos' version of events was "incredible and implausible." Further, the order stated that the "continued pursuit" of the motion to disqualify was "an exercise in hubristic pique" by Halmos and PAH. (Id. at 5.)

Next, with respect to Mrachek and his firm, the order stated that Mrachek "chose to pursue the motion . . . with vigor notwithstanding its obvious lack of merit" and "[i]t is almost inconceivable that a lawyer of Mrachek's experience and credentials would prosecute a motion so lacking in factual foundation, so calculated and executed to inflict as much expense and delay as possible on Debtor and his lawyers, and so patently vindictive toward a young lawyer like Pendergraft." (Id. at 5.)

On November 2, 2015, Judge Olson entered an order determining that Mrachek was jointly and severally liable, with PAH, in the amount of $120,433.65, the attorney's fees and costs found to have been incurred by Eliopoulos in connection with the motion to disqualify, since Mrachek's appearance in the case. The order concluded with the following observation:

> Perhaps the most significant element in this Court's determination that [non-monetary] sanctions would be ineffective and are unwarranted in this case is the complete lack of recognition by Mrachek and PAH that either of them did anything wrong. There is no whiff of regret; no hint of contrition; no acknowledgement that any of what they did in pursuing the Motion to Disqualify was wrong; no concession even that maybe, perhaps, they went a little overboard. Rather, the Mrachek Response and the PAH Response boldly assert that they did nothing wrong and that no sanction is warranted, thereby demonstrating that they have learned nothing from this entire unpleasant episode…The Court cannot overlook the vindictive and meanspirited way in which the Motion to Disqualify was filed and prosecuted. Mrachek and Halmos have behaved throughout this proceeding as arrogant and overbearing bullies, and the Mrachek Response and the PAH Response manifest that same pharisaical attitude and behavior. Confronted with that reality, the Court concludes that a slap on the wrist would have no deterrent effect. With regret, the Court concludes that significant monetary sanctions are, unfortunately, the only way to get Mrachek's and PAH's attention and to deter similar future conduct by them or others.

(Id. at 10.)

Appellants appeal the bankruptcy court's award of sanctions against them on the following bases: first, that the motion to disqualify was sufficient and in good form on its face based on Pendergraft's violation of Rule 4-1.18 by talking to Halmos about the case when he knew of two conflicts, by SFL not providing timely notice to PAH of its hiring of Pendergraft, and by not implementing sufficient and timely procedures to screen Pendergraft; and second, that Halmos testified at his deposition that he gave confidential information to Pendergraft and his deposition was not incredible.

In response, Eliopoulos states that Judge Olson based his conclusions on an extensive record.  Furthermore, Eliopoulos contends that Halmos' testimony was absurd and Appellants' actions delayed the bankruptcy case. Finally, Eliopoulos states that PAH publicly disclosed the same information the motion to disqualify was ostensibly filed to protect.

II.  Legal Standard

 In reviewing an order sanctioning an attorney, the district court uses an abuse of discretion standard.  Thomas v. Tenneco Packaging Co., Inc., 293 F.3d 1306, 1319 (11th Cir. 2002); In re Kevin C. Gleason, No. 11–62406–CIV, 2012 WL 463924, at * 3 (S.D. Fla. Feb. 13, 2012).  Under that standard, this Court must affirm unless it finds that the bankruptcy court made a clear error of judgment or applied the wrong legal standard.  See Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1238 (11th Cir. 2007).

The bankruptcy court grounded its sanctions order on Federal Rule of Bankruptcy Procedure 9011 ("Rule 9011").  Rule 9011 governs the signing and verification of papers filed

with the court and, therefore, provides authority for imposition of sanctions for bad-faith filings. In re Bellew, 71 B.R. 72, 73  (Bankr. M.D. Fla. 1987); In re Smail, 129 B.R. 676, 678-69 (Bankr. M.D. Fla. 1991).

Rule 9011 provides that sanctions are warranted when (1) the papers are frivolous, legally unreasonable or without factual foundation, or (2) the pleading is filed in bad faith or for an improper purpose.  In re Mroz,  65 F.3d 1567, 1572 (11th Cir.  1995).  While bad faith is the key to unlocking the court's inherent power, a court must do more than conclude that a party acted in bad faith; it should make specific findings as to the party's conduct that warrants sanctioning.  In re Gleason, No. 12–11433,  2012 WL 4857014, at * 3 (11th Cir. Oct. 15, 2012) (citing In re Porto, 645 F.3d 1294, 1304 (11th Cir. 2011)) ("[t]o support a finding of bad faith, the bankruptcy court should make specific findings about the party's conduct that warrants sanctions")).

III. Discussion

In this case, the bankruptcy court erred when it concluded that Appellants filed the motion to disqualify in bad faith or for an improper purpose.  A review of the record at the time Appellants became involved in the case, and prosecuted the motion to disqualify, does not support the bankruptcy court's findings.

The Court concludes that the bankruptcy court made a clear error in judgment when it found that it was  "perfectly clear" from the deposition transcript that the motion to disqualify was "without factual foundation" and that Halmos' version of events was "incredible and implausible."  From a cold reading of the Halmos and Pendergraft deposition transcripts by Appellants when they became involved in the case and decided to continued to pursue the disqualification motion, there was nothing implausible about Halmos' testimony.  Halmos

9

testified that he spoke to Pendergraft and revealed various confidences, including strategy and settlement.  While it is certainly possible that such testimony was false, and while a trier of fact is certainly within its rights to come to such a conclusion after a full hearing on the merits of the disputed claims, Appellants could not have made that determination based solely on reading the deposition testimony.  Indeed, Pendergraft's deposition testimony did nothing to undercut Halmos' version of the facts since he could not remember if they discussed settlement or strategy during their telephone conversations.  Hence, while the bankruptcy court, as the trier of fact on the disputed claims, made a credibility finding after holding an evidentiary hearing, Appellants did not have the benefit of the full evidentiary record or the bankruptcy court's findings in deciding to pursue the motion.  Instead, Appellants merely had the word of their client and the deposition of Pendergraft, which did not refute Halos' assertions.

Furthermore, Appellants did not file the motion to disqualify. The motion was filed by Stellato.  When Appellants inherited the case, they learned that Halmos had reached out to a potential attorney while involved in litigation and engaged in substantive discussion about the case.  Soon thereafter, that attorney joined the opposing party's law firm and that firm did not disclose the contact between Pendergraft and Halmos.  These facts, on their face, raise legitimate issues which would render the filing of the motion justified.

The record also does not support a finding that a review of Halmos' deposition would reveal that no confidential information was conveyed during the telephone call between Halmos and Pendergraft.  As discussed <u>supra</u>, according to Halmos, he discussed strategy and settlement with Pendergraft.  <u>See</u> <u>Miness v. Ahuja</u>, 762 F. Supp. 2d 465, 480-81 (E.D.N.Y. 2010) (granting a motion to disqualify and finding that (1) "the plaintiff's present thoughts and feelings on the

developing situation, (2) the plaintiff's personal accounts of each relevant event shortly after it happened, and (3) the plaintiff's strategic thinking concerning how to manage the situation" constituted disqualifying information); <u>DeDavid v. Alaron Trading Corp.</u>, Case no. 10-3502, 2012 WL 1429564, at * 2 (N.D. Ill. Apr. 23, 2012) (granting motion to withdraw and noting that "opinions and impressions of even public documents and facts would establish privileged information."). Once again, while the bankruptcy court was free to reject Halmos' testimony in this regard after a full evidentiary hearing and having the benefit of assessing the credibility of the competing witnesses, a review of the Halmos deposition alone, or in conjunction with the Pendergraft deposition, does not support that conclusion.

Equally unsupportable was the bankruptcy court's determination that the information was public or that PAH waived the privilege to the extent that it could be used by adversaries in the litigation against it. To be sure, Halmos revealed the content of his conversation with Pendergraft. But this disclosure was dictated by the bankruptcy court who needed the disclosure to rule on the motion to disqualify.[1] And even if the privilege had been waived, that waiver did not eliminate the need for a determination as to whether disqualification was still warranted since Pendergraft's conflict with PAH became imputed to SFL once employed there. See Rule 4-1.10, Imputation of Conflicts of Interest ("When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client

---

[1] Eliopoulos makes much of the fact that the parties were directed to enter into a confidentiality agreement which they never did. Nonetheless, the only reason Halmos testified in a deposition was to comply with the bankruptcy court's directive to figure out a way to allow the bankruptcy court to rule on the motion to disqualify.

whose interests are materially adverse to that person and about whom the lawyer had acquired

information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.").   In any

event, a disclosure in this context cannot be a basis for an attorney who receives confidential

information to use the information against the potential client.  See Rule 4-1.8(b) of the Florida

Rules of Professional Conduct ("A lawyer shall not use information relating to the representation

of a client to the disadvantage of the client unless the client gives informed consent, except as

permitted or required by these rules." )

   To the extent the bankruptcy court found this information to be  "generally known"

under Rule 4.1-9,[2]  that is clearly wrong.  Indeed, the comments to Rule 4-1.9 explain as follows:

> Information that has been widely disseminated by the media to the public, or that typically
> would be obtained by any reasonably prudent lawyer who had never represented the former
> client, should be considered generally known and ordinarily will not be disqualifying. The
> essential question is whether, but for having represented the former client, the lawyer would
> know or discover the information.

Rule 4-1.9.

   The record shows no information had been disseminated by the media.  The only way

other attorneys became privy to the information was because a full record had to be developed

---

[2] Rule 4-1.9 provides:

Conflict of Interest: Former Client

A lawyer who has formerly represented a client in a matter must not afterwards:
. . .

(b)  use information relating to the representation to the disadvantage of the former client
except as these rules would permit or require with respect to a client or when the information has
become generally known;

Rule 4-1.9.

regarding the communications between Halmos and Pendergraft.  In fact, Pendergraft only

discovered the information because he and Halmos talked about potential representation, not

because the information was public.

Finally, the bankruptcy court erred in concluding the information at issue could not be

used to PAH's disadvantage.  According to Halmos, a discussion of strategy and settlement

occurred.  From Appellants' perspective, they had a right to assume that to be true until

determined otherwise by the bankruptcy court.  See Zalewski v. Shelroc Homes, LLC, 856 F.

Supp. 2d 426, 435 (N.D.N.Y. 2012) (information about settlement can serve as an "unfair

advantage" and be "ruinous" for a party).[3]  Clearly, that is information that can be used to the

disadvantage of PAH.  It is precisely such information that must be kept confidential.  See Rule

4-1.18 ("Even when no client-lawyer relationship ensues, a lawyer who has learned information

from a prospective client may not use or reveal that information. . .").

In sum, at the hearing the bankruptcy court had the opportunity to hear both Halmos and

Pendergraft testify and make a credibility determination. Such an opportunity was not available

to Appellants and it is unfair to impute to those attorneys the conclusions the bankruptcy court

reached from holding a hearing on the merits of the motion.

For the foregoing reasons, the Court finds the bankruptcy court's July 27, 2015 and

November 2, 2015 orders were an abuse of discretion.

---

[3] Eliopoulos relies on several cases in which courts have denied motions to disqualify that
were premised on confidential information. (Resp. at 27.)  Those cases, however, are
distinguishable. None of those cases concerned the waiver of confidential information as part of a
motion to disqualify.

IV. Conclusion

Based upon the foregoing, it is **ORDERED AND ADJUDGED** that the decisions on appeal of the bankruptcy court is **REVERSED**.  This case is **CLOSED**, and all pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 28th day of September, 2016.

_____
KENNETH A. MARRA
United States District Judge

14